UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROLONDO DEWELL CLARK,

      Defendant-Movant,

v.

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

_____/

Case No. 1:23-cv-950

Honorable Paul L. Maloney

## OPINION AND ORDER

Currently pending before the Court is Defendant-Movant Rolondo Dewell Clark ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.    Background**

On November 20, 2019, a grand jury returned an Indictment charging Defendant with possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 1). On November 21, 2019, the government filed an Information and Notice of Prior Serious Drug Felony Conviction, noting that Defendant had twice been convicted of serious drug felonies in state court and that he would be subject to enhanced penalties if convicted of the charge set forth in the Indictment because of those prior convictions. *See* Information, *id.* (ECF No. 5).

After Defendant's arrest, attorney James Stevenson Fisher was appointed to represent him. Shortly thereafter, however, Defendant retained attorney Jonathan White. However, in February of 2020, Defendant retained attorney Michael Maddaloni, who was substituted in White's place as

counsel of record. Defendant changed counsel yet again in June of 2020, when he retained Lucas X. Dillon and Nicole A. Samuel to represent him.

On July 31, 2020, Defendant, through attorney Dillon, filed a motion to suppress, seeking suppression of evidence seized following a search of Defendant's residence. *See* Mot. to Suppress, *id.* (ECF No. 40). Specifically, Defendant asserted that the suspicionless search violated his Fourth Amendment rights, and that he had not consented to the search. *Id.* (ECF No. 40, PageID.113). The Court held a hearing regarding the motion on October 7, 2020. In an order entered the next day, the Court denied the motion to suppress. *See* Order, *id.* (ECF No. 52).

Ultimately, after a two-day trial, a jury found Defendant guilty of the count set forth in the Indictment. *See* Jury Verdict, *id.* (ECF No. 76). The parties appeared before the Court for Defendant's sentencing on March 29, 2021. The Court sentenced Defendant to 300 months of incarceration, to be followed by 8 years of supervised release. *See* J., *id.* (ECF No. 89).

Defendant appealed, and attorney Eric George Eckes was appointed to represent him on appeal. On appeal, Defendant argued that this Court should not have admitted evidence of his prior drug-dealing conviction under Rule 404(b) of the Federal Rules of Evidence. *See United States v. Clark*, No. 21-1316, 2022 WL 2231062, at *1 (6th Cir. June 21, 2022). He also argued that the government did not present sufficient evidence to support his conviction. *Id.* The Sixth Circuit provided the following summary of the factual basis for Defendant's conviction:

> In 2016, Clark pleaded guilty to illegal delivery of a controlled substance analogue in Michigan state court. After serving his prison time, he was released on parole. Clark soon tested positive for cocaine. Around the same time, his parole officer found a picture of "large stacks of cash" on his phone. The positive test, coupled with Clark's apparent wealth despite a lack of legitimate income, caused the officer to suspect that he might be dealing drugs again.
>
> The parole officer decided to search Clark's two-bedroom apartment as a "compliance check" for his parole. Clark's GPS ankle monitor showed that he had spent most of his time at the apartment in the previous two days. When agents arrived at Clark's residence, which he had previously reported he shared with his

mother, they searched the back bedroom first. The bed in that room had no sheets or pillows. The only other items in the back room were children's toys, clothes, and shoes, a single pair of adult shoes, and an empty "corner baggie," which is commonly used by drug dealers.

The officers next searched the front bedroom, which was where Clark indicated "all of his stuff was." That search turned up distribution quantities of cocaine and cocaine base,[] digital scales covered in drug residue, Clark's expired driver's license, Clark's clothes in the dresser and in a bag by the bed, and several pairs of Clark's shoes. Clark's parole officer then searched his phone, finding a drug ledger that was last modified that day, and messages showing that Clark was actively selling drugs in the days preceding the search.

*Id.* (footnote omitted). The Sixth Circuit rejected Defendant's arguments and affirmed his conviction, noting that "the overwhelming evidence of [Defendant's] guilt forecloses both arguments." *Id.*

Defendant filed his § 2255 motion (ECF No. 1) on September 8, 2023. In an order (ECF No. 4) entered on September 12, 2023, the Court directed the government to file a response. The Court subsequently granted the government's motion for an extension of time and an order authorizing the release of information subject to the attorney-client privilege. (ECF Nos. 7, 9.) Attorneys Eckes and Dillon filed affidavits addressing Defendant's claims of ineffective assistance on November 28 and 29, 2023. (ECF Nos. 10, 11.) The government filed its response (ECF No. 12) on December 13, 2023, and Defendant filed a reply (ECF No. 13) on January 22, 2024.

## II.    Analysis

### A.    Legal Standards

#### 1.    Section 2255 Proceedings in General

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced by filing a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

### 2.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

### 3.    Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

**B.      Discussion**

Defendant raises the following grounds for relief in his § 2255 motion:

I.      Trial counsel was ineffective by failing to adequately investigate, research, and litigate the motion to suppress.

II.      Appellate counsel was ineffective for failing to challenge the denial of the motion to suppress, the erroneous career offender designation, and the statutory enhancement under 21 U.S.C. § 841(b)(1)(B).

III.      Counsel was ineffective at sentencing by failing to investigate Defendant's prior convictions used to enhance his sentence as a career offender and under 21 U.S.C. § 841(b)(1)(B).

IV.      If Defendant successfully attacks two of his prior state convictions, he will no longer be neither a career offender nor subject to the enhancement under § 841(b)(1)(B).

V.      Counsel was ineffective for failing to file a motion to dismiss on speedy trial grounds.

VI.      Counsel failed to research and file a "Motion to Dismiss Fatally Defective Duplicitous Indictment."

(§ 2255 Mot., ECF No. 1, PageID.4–23.) The government contends that all of Defendant's claims lack merit. (ECF No. 12.)

**1.      Ground IV—Attack on State Convictions**

In ground IV, Defendant contends that he is currently in the process of collaterally attacking two of his Michigan state convictions—one from 2007 for Delivery/Manufacture of Cocaine Less than 50 Grams and one from 2016 for Creation/Delivery of an Analogue. (§ 2255 Mot., ECF No. 1, PageID.15.) Defendant contends that if those attacks are successful, he would no longer qualify for the career offender enhancement or the statutory sentencing enhancement under 21 U.S.C. § 841(b)(1)(B). (*Id.*) Defendant requests that the Court "employ a stay-and-abeyance procedure consistent with *Rhines v. Weber*, 544 U.S. 269 (2005)," as well as *United States v. Purvis*, 662 F.3d 939 (7th Cir. 2011). (*Id.*)

6

The government has not responded to Defendant's argument, stating that it is not ripe for review. (ECF No. 12, PageID.63 n.2.) The Court agrees with the government. Until Defendant successfully challenges his 2007 and 2016 convictions and has them overturned, any claim for relief regarding the effect those convictions had on his federal sentence is not yet ripe for review because it is based upon events that have not yet concerned. Moreover, Defendant's concerns are misplaced, as any claim seeking to challenge his federal sentence after expungement of a prior conviction that affected his criminal history score will not qualify as a "second or successive" claim requiring authorization from the Sixth Circuit. *See In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010) (concluding that § 2254 claim that was not ripe when the first petition was filed because it was based on events that had not yet occurred was not a "second or successive" claim and did not require prior authorization from the Sixth Circuit before filing it in the district court); *see also In re Weathersby*, 717 F.3d 1108 (10th Cir. 2013) (claim based on alleged expungement of a prior offense did not qualify as a second or successive petition because the basis for the claim did not exist when the first petition was filed); *cf. Mizori v. United States*, No. 1:23-cv-458, 2024 WL 4562679, at *2 (W.D. Mich. Oct. 24, 2024) (noting that the Sixth Circuit concluded that the defendant did not need authorization to file a § 2255 motion requesting resentencing because one of his prior convictions used to calculate his Guidelines range had been expunged and that claim was not ripe for consideration when the defendant filed his first § 2255 motion).

Accordingly, the Court declines to employ a stay-and-abeyance for this ground for relief as requested by Defendant. Instead, this ground will be dismissed without prejudice to Defendant's right to refile it should his attacks on his 2007 and 2006 state convictions be successful.

### 2.    Grounds Alleging Ineffective Assistance of Trial Counsel

### a.    Ground I—Failure to Adequately Litigate Motion to Suppress

As his first ground for relief, Defendant contends that attorney Dillon rendered ineffective assistance by failing to adequately investigate, research, and litigate the motion to suppress. (§ 2255 Mot., ECF No. 1, PageID.4.) Defendant suggests that because the search was conducted by his Michigan Department of Corrections (MDOC) parole officer and officers from the Lansing Police Department, "state law is controlling in the case." (*Id.*) Defendant argues that the search of his mother's bedroom was illegal because "she was neither on parole nor [gave consent] to search." (*Id.*, PageID.6.) Finally, Defendant avers that attorney Dillon should have argued that "the administrative powers of a parole officer do[] not extend to police officers who have no supervisory power over probationers or parolees." (*Id.*)

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has noted that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019). As discussed below, Defendant has not made that showing.

First, any suggestion by attorney Dillon that state law should govern the motion to suppress is wholly without merit. "The question whether evidence obtained by state officers and used

against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." *Preston v. United States*, 376 U.S. 364, 366 (1964). In other words, whether the "seizure may have violated state law is irrelevant." *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994). Any argument otherwise by attorney Dillon would have been futile.

Defendant's parole officer testified at the hearing regarding the motion to suppress. He noted that under Special Condition 4.2 of parole, a parolee "is subject to search without a warrant by a parole officer or peace officer on demand. Not limited to their person, property, vehicle, residence, area of control." *See* Mot. to Suppress Hr'g Tr., *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 54, PageID.165). Defendant signed to acknowledge that condition. *Id.* (ECF No. 54, PageID.167–169). Defendant's parole officer testified that he asked Defendant's mother if they could search the "near bedroom" because he "felt that there was guns or drugs in that residence somewhere, and we did not locate them in the back bedroom." *Id.* (ECF No. 54, PageID.178). Defendant's mother gave her consent. *Id.* Defendant was standing right there when she did, and he did not object to the search. *Id.*

To counter his parole officer's testimony, Defendant has submitted a sworn declaration in which he states:

> On September 17, 2019, my mother Vanessa Clark never gave the Lansing Police Department officers or my parole officer consent to search her bedroom. If an [e]videntiary [h]earing is held my mother Vanessa Clark will testify that she never gave consent to LPD officers or my parole officer to search her bedroom on September 17, 2019.

(ECF No. 13-2, PageID.103.) Defendant's declaration, executed on January 22, 2024, is entirely self-serving and is insufficient to counter the sworn testimony given by his parole officer at the suppression hearing. Notably, the timing of the declaration—more than three years after the suppression hearing—is suspect. If Defendant's mother had truly not given consent for the search,

Defendant provides no reason why she could not have testified to such at the suppression hearing itself. Likewise, he provides no indication that he provided that information to attorney Dillon at the time of the hearing. Given the parole officer's testimony, it was entirely reasonable for attorney Dillon to not assert an argument that Defendant's mother had not given consent.

Finally, attorney Dillon was not deficient for failing to argue that the search "conducted by Lansing Police Officers under the administrative powers of a parole officer does not extend to police officers who have no supervisory power over probationers or parolees." (§ 2255 Mot., ECF No. 1, PageID.6.) Notably, "a probation search remains legal even though police authorities cooperate or jointly participate with the probation authorities." *United States v. Oakes*, No. 00-76-P-C, 2001 WL 30530, at *5 (D. Me. Jan. 10, 2001) (citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 10.10(e) (3d ed. 1996)); *see also United States ex rel. Santos v. N.Y. State Bd. of Parole*, 441 F.2d 1216, 1218 (2d Cir. 1971) ("The mere fact that the police officer was the first to suspect that appellant was engaged in criminal activity and related this fact to the parole officer and was present at the subsequent investigation in no way alters the legality of the parole officer's presence. It does not require the suppression of the seized evidence from use in a subsequent criminal prosecution.").

In sum, attorney Dillon was not ineffective for failing to raise the arguments Defendant believes he should have raised in his motion to suppress because those arguments are entirely without merit. Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). Defendant, therefore, is not entitled to relief with respect to ground I.

### b.    Ground III—Failure to Investigate Prior Convictions Used to Enhance Sentence

As ground III, Defendant contends that attorney Dillon was ineffective for not investigating the prior convictions used to determine that Defendant qualified as a career offender and used to statutorily enhance his sentence under 21 U.S.C. § 841(b)(1)(B). (§ 2255 Mot., ECF No. 1, PageID.12.)

### (i)    Statutory Enhancement

Because Defendant was convicted of possession with the intent to distribute 28 grams or more of cocaine base, § 841(b)(1)(B)(iii) provided that he was subject to a minimum of 5 years and a maximum of 40 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(B)(iii). As set forth *supra*, however, the government filed an Information and Notice of Prior Serious Drug Felony Conviction, noting that Defendant had twice been convicted of serious drug felonies in state court and that he would be subject to enhanced penalties if convicted of the charge set forth in the Indictment because of those prior convictions. *See* Information, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 5.) Those enhanced penalties included a mandatory minimum of 10 years of imprisonment and a maximum of life. *See* 21 U.S.C. § 841(b)(1)(B).

Federal law defines a "serious drug felony" as an "offense described in section 924(e)(2) of Title 18 for which the offender served a term of imprisonment of more than 12 months; and the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." *See* 21 U.S.C. § 802(57). Section 924(e)(2) defines a "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." *See* 18 U.S.C. § 924(e)(2).

11

The Information filed by the government noted that on or about February 24, 2016, Defendant had been convicted of distribution of a controlled substance delivery—creation or distribution of a controlled substance analogue, in violation of Mich. Comp. Laws § 333.7402(2)(e) in Ingham County. *See* Information, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 5.) The Information also noted that on or about March 26, 2007, Defendant had been convicted of delivery/manufacturing of a controlled substance, in violation of Mich. Comp. Laws § 333.7401(2)(a)(4), in Muskegon County. *Id.* Defendant served more than 12 months of imprisonment for each conviction and was released from those terms of imprisonment within 15 years of commencement of his federal offense. *Id.*

Defendant contends that his state convictions could not qualify as serious drug felonies because "the Michigan definition of cocaine is broader than the federal definition and the Michigan definition of controlled substance analogue is broader than the federal definition." (§ 2255 Mot., ECF No. 1, PageID.12.) The Sixth Circuit, however, has "held that Michigan's definition of cocaine covers the same substances as the federal Controlled Substances Act but is no broader than that law." *United States v. Johnson*, No. 22-1621, 2023 WL 5206447, at *2 (6th Cir. Aug. 14, 2023) (citing *United States v. Wilkes*, 78 F.4th 272 (6th Cir. 2023)). Thus, Defendant's 2007 conviction properly qualified as a serious drug felony.

Defendant's Presentence Investigation Report (PSR) indicates that his 2016 conviction was premised upon a finding that Defendant was in possession of acetaminophen/hydrocodone and cyclobenzaprine. *See* PSR, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 82, PageID.405). As noted above, a controlled substance is defined under 21 U.S.C. § 802. That statute provides that a "controlled substance" is "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." *See* 21 U.S.C. § 802(6). In

2014, hydrocodone was reclassified as a schedule II substance. *See Bains v. Garland*, No. 23-3208, 2024 WL 3950812, at *4 n.5 (6th Cir. Aug. 27, 2024). Thus, because hydrocodone is a controlled substance under federal law, Defendant's 2016 conviction also qualified as a serious drug felony for purposes of the statutory enhancement.

Because Defendant's arguments are directly contradicted by federal law, the Court cannot agree with Defendant that attorney Dillon was ineffective for failing to challenge the use of these convictions to statutorily enhance Defendant's sentencing exposure. In any event, Defendant cannot demonstrate any prejudice from attorney Dillon's decision to not raise this challenge. At sentencing, the Court indicated that with the § 851 enhancement, Defendant's guidelines called for 360 months to life imprisonment. *See* Sentencing Tr., *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 99, PageID.875). The Court, however, imposed a sentence of 300 months, stating:

> The Court notes that a sentence of 300 months is the mid range at Offense Level 34, Criminal History Category VI, so in essence, I'm applying the career offender as if the statutory maximum was 40 years instead of the life maximum that Mr. Clark gets as a result of the Supplemental Information pursuant to Section 851.

*Id.* (ECF No. 99, PageID.887). Accordingly, Defendant is not entitled to relief with respect to this assertion of ineffective assistance of counsel at sentencing.

### (ii)    Career Offender

The Sentencing Guidelines provide that a defendant is a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). For purposes of the career offender designation, the Guidelines define a "controlled substance offense" as

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or (2) is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

U.S.S.G. § 4B1.2(b).

Here, the Probation Officer who prepared Defendant's PSR concluded that three of Defendant's prior state convictions qualified as controlled substance offenses for purposes of the career offender designation: (1) Defendant's 2007 conviction for delivery/manufacturing of cocaine less than 50 grams; (2) Defendant's 2012 conviction for delivery/manufacturing marijuana; and (3) Defendant's 2016 conviction for controlled substance—creation/delivery of an analogue. *See* PSR, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 82, PageID.402–405). Defendant contends that neither his 2007 nor his 2016 conviction qualify as controlled substances offenses, and that attorney Dillon was ineffective for failing to challenge this designation.

As an initial matter, although attorney Dillon did not directly object to the career offender designation, he noted for the record at sentencing that Defendant would object on the basis that his prior convictions did not qualify as controlled substances offenses. *See* Sentencing Tr., *id.* (ECF No. 99, PageID.876). Attorney Dillon noted that he and co-counsel had discussed the matter with the Probation Officer and the government, and that Defendant "just wants that placed on the record that he has objected to it." *Id.*

First, with respect to Defendant's challenge to his 2007 conviction, the Sixth Circuit has held that a violation of Mich. Comp. Laws § 333.7401 for delivery is a predicate offense for career offender purposes. *See United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020); *see also United States v. Powell*, 836 F. App'x 391, 399 (6th Cir. 2020) (noting that "convictions for violating

14

§ 333.7401 are controlled substances offenses under § 4B1.1(a) and 4B1.2(b) of the Sentencing Guidelines"); *United States v. Brown*, 727 F. App'x 126, 129 (6th Cir. 2018) (concluding that a conviction under § 333.7401 for delivery or manufacture of less than 50 grams of a controlled substance qualifies as a controlled substance offense for purposes of the career offender designation). Likewise, any argument by Defendant that Michigan criminalizes a broader range of substances than federal law is misplaced, as the Sixth Circuit has now clarified that the Guidelines' definition of a controlled substance offense is not "limited to substances criminalized under the Controlled Substances Act." *United States v. Jones*, 81 F.4th 591, 597 (6th Cir. 2023); *see also United States v. Robinson*, No. 22-1230, 2023 WL 8437242, at *2–3 (6th Cir. Dec. 5, 2023) (rejecting argument that the defendant's conviction for possession with intent to deliver less than 50 grams of cocaine under Mich. Comp. Laws § 333.7401(2)(a)(iv) did not qualify as a controlled substance offense for purposes of the career offender designation).

With respect to Defendant's 2016 conviction for controlled substance—creation/delivery of an analogue, it does not appear that the Sixth Circuit has directly addressed the question of whether a conviction under this statute qualifies as a controlled substance offense for purposes of the career offender designation. However, as noted *supra*, the Sixth Circuit recently concluded that there is "no textual limit that a controlled substance offense must contain a substance listed in the Controlled Substances Act." *Jones*, 81 F.4th at 599. In reaching that conclusion, the Sixth Circuit relied upon its decision in *United States v. Smith*, 681 F. App'x 483 (6th Cir. 2017), in which the court noted:

> Because there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that [a state] may have criminalized . . . some substances that are not criminalized under federal law does not prevent conduct prohibited under the [state] statute from qualifying, categorically, as a predicate offense.

*Id.* at 489. In light of *Jones* and *Smith*, the Court cannot agree with Defendant that his 2016 conviction does not qualify as a predicate offense for purposes of the career offender determination.

The Court recognizes that the law regarding what qualified as a controlled substance offense was still in flux at the time of Defendant's sentencing, and that many of the cases cited above were not decided until after Defendant was sentenced by this Court. However, trial counsel's failure "to present a novel legal argument when the caselaw is ambiguous does not constitute ineffective assistance." *Alexander v. Smith*, 311 F. App'x 875, 887 (6th Cir. 2009); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (noting that "nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"). In light of the foregoing, attorney Dillon was not ineffective for not challenging the career offender designation.

In sum, Defendant has not demonstrated that attorney Dillon was ineffective for failing to challenge both the statutory enhancement and the career offender designation. Defendant, therefore, is not entitled to relief with respect to ground III.

### c.    Ground V—Failure to File Motion to Dismiss on Speedy Trial Grounds

In ground V, Defendant faults attorney Dillon for not filing a motion to dismiss based upon a violation of the Speedy Trial Act, 18 U.S.C. § 3161. (§ 2255 Mot., ECF No. 1, PageID.18–19.)

"The Speedy Trial Act requires that the government try a criminal defendant within 70 days (with certain days excused) of the defendant's indictment or first court appearance, whichever comes later." *United States v. Tolliver*, 949 F.3d 244, 246 (6th Cir. 2020) (per curiam). Here, Defendant made his initial appearance on November 25, 2019. However, because the government sought Defendant's pretrial detention in this matter, the Speedy Trial clock was tolled from

16

November 25, 2019, until December 2, 2019, when the issue of detention was resolved. *See* 18

U.S.C. § 3161(h)(1)(D) (noting that delays "resulting from any pretrial motion, from the filing of

the motion through the conclusion of the hearing on, or other prompt disposition of, such motion,"

are excluded from the 70-day period). Accordingly, the Speedy Trial Act clock began to run on

December 3, 2019, the day after Magistrate Judge Kent entered his order of detention as to

Defendant.

The clock ran for 28 days, until December 31, 2019, when Defendant, through attorney

White, filed a motion for an ends of justice continuance. *See* Mot., *United States v. Clark*, No. 1:19-

cr-280 (W.D. Mich.) (ECF No. 16). Ultimately, this Court entered three orders finding that the

ends of justice would be served by granting continuances in this matter. *See* Orders, *id.* (ECF Nos.

17, 23, 27). Delays resulting from the granting of continuances "on the basis of [the judge's]

findings that the ends of justice served by taking such an action outweigh the best interest of the

public and the defendant in a speedy trial" are excluded from the 70-day period. *See* 18 U.S.C.

§ 3161(h)(7)(A); *see also United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014) (noting that

the "Speedy Trial Act excludes delay caused by a continuance 'that [serves] the ends of justice'

and 'outweigh[s] the best interest of the public and the defendant in a speedy trial.'").

Defendant contends that because the Court's three ends of justice orders did not

"specifically entail the exclusion period upon the record," his "reasonable interpretation of such

Orders is that the exclusions were limited to 30 days per Order in which equals 90 DAYS for all

three ends of justice [c]ontinuances." (§ 2255 Mot., ECF No. 1, PageID.19.) Defendant avers that

under this calculation, his Speedy Trial Act rights were violated as of May 10, 2021, when 71 days

had elapsed. (*Id.*) In support of his argument, Defendant cites *Bloate v. United States*, 559 U.S.

196 (2010).

In *Bloate*, the Supreme Court considered "the narrow question whether time granted to a party to *prepare* pretrial motions is automatically excludable from the Act's 70–day limit under subsection (h)(1), or whether such time may be excluded only if a court makes case-specific findings under subsection (h)(7)." *See Bloate*, 559 U.S. at 199. The Court reversed the Eighth Circuit's conclusion that such time was automatically excludable. *Id.*

The Court finds that Defendant's reliance upon *Bloate* is misplaced. Nowhere in *Bloate* did the Court apply a 30-day limit to an order granting an ends of justice continuance under § 3161(h)(7)(A). Likewise, nowhere in the Speedy Trial Act does it mandate that a court granting an ends of justice continuance "specifically entail the exclusion period upon the record" as Defendant suggests. Accordingly, the continuances granted by the Court's three orders did not toll the Speedy Trial Act clock for 90 days as Defendant suggests.

The Court agrees with the government that due to the three orders granting ends of justice continuances, the Speedy Trial Act clock was stopped from December 31, 2019, when the first motion seeking such a continuance was filed, until December 15, 2020, when Defendant's jury trial began. During that time period, Defendant's motion to suppress also served to toll the Speedy Trial Act clock. Accordingly, because no Speedy Trial Act violation occurred, the Court cannot agree that attorney Dillon was ineffective for failing to file a motion to dismiss on this basis. *See Ludwig*, 162 F.3d at 459; *see also Coley*, 706 F.3d at 752. Defendant, therefore, is not entitled to relief on ground V.

### b.    Ground VI—Failure to File Motion to Dismiss Duplicitous Indictment

As his final ground for relief, Defendant faults trial counsel for not filing a motion to dismiss on the basis that the Indictment was fatally defective because it was duplicitous. (§ 2255 Mot., ECF No. 1, PageID.20.) Defendant asserts that the Indictment was duplicitous because the

sole count charged him with possession with intent to distribute 28 grams or more of cocaine base, as well as possession with intent to distribute cocaine. (*Id.*, PageID.22.) Defendant suggests that the two offenses carry different statutory penalties, and that there is "uncertainty as to whether his conviction was based on a unanimous jury decision as to both federal offenses." (*Id.*)

"A duplicitous indictment charges separate offenses within a single count. The overall vice of duplicity is that the jury cannot in a single verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010) (quoting *United States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997)). "While a duplicative indictment can prejudice a defendant in a variety of ways, the primary concern is that a defendant may be deprived of his right to a unanimous jury verdict." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007). However, "proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006) (quotation omitted).

Here, the Indictment charged Defendant with possession with intent to distribute 28 grams or more of cocaine base and a detectable amount of cocaine. *See* Indictment, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 1). Because the Indictment specified 28 grams or more of cocaine base, Defendant faced a minimum sentence of 5 years, and a maximum of 40 years, if convicted on that basis. *See* 21 U.S.C. § 841(b)(1)(B)(iii). He did not face a mandatory minimum for the detectable amount of cocaine. At trial, the parties stipulated to the admission of five government exhibits into evidence. Specifically, the parties stipulated:

> The stipulation as confirmed by laboratory testimony, or excuse me, laboratory testing, Government Exhibit 1 is 122.18 grams of cocaine. Government Exhibit 2 is 26.46 grams of cocaine base. Government Exhibit 3 is 9.67 grams of cocaine

base. Government Exhibit 4 is 2.97 grams of cocaine. And Government Exhibit 5 is .69 grams of cocaine.

*See* Trial Tr. I, *United States v. Clark*, No. 1:19-cr-280 (W.D. Mich.) (ECF No. 97, PageID.610).

During final jury instructions, the Court instructed the jury as follows:

> The defendant is charged in the Indictment with possession with intent to distribute controlled substances. If you find the defendant guilty of this charge, you will then be asked to determine the quantity of the cocaine base involved in the offense. You will be provided with a verdict form for this purpose.
>
> If you find by unanimous agreement that the government has proved beyond a reasonable doubt that the offense involved a quantity of 28 grams or more of a mixture or substance containing a detectable amount of cocaine base, then please indicate this finding by checking that line on the verdict form.
>
> In determining the quantity of the controlled substance involved in the offense, you need not find the defendant knew the quantity involved in the offense.

*See* Trial Tr. II, *id.* (ECF No. 98, PageID.853–854). The jury verdict form indicates that the jury found Defendant guilty of possession with intent to distribute controlled substances. *See* Jury Verdict, *id.* (ECF No. 76). The jury then went on to find that the amount of cocaine base involved was 28 grams or more. *Id.*

In light of the parties' stipulation and the jury instruction provided, the Court cannot agree with Defendant that he was prejudiced by counsel's failure to challenge any duplicitous nature of the Indictment via a motion to dismiss. The jury clearly found Defendant guilty of the offense and explicitly made a unanimous finding regarding the amount of cocaine base involved. Defendant, therefore, is not entitled to relief with respect to ground VI.

### 3.    Ground II—Ineffective Assistance of Appellate Counsel

In ground II, Defendant faults appellate counsel Eckes for failing to challenge the following issues on appeal: (1) the denial of the motion to suppress; (2) the application of the career offender sentencing enhancement; and (3) the statutory enhancement under § 841(b)(1)(B). (§ 2255 Mot., ECF No. 1, PageID.9.)

Attorney Eckes has addressed Defendant's assertions in his affidavit. He states that he and an associate at his firm discussed "both the career offender enhancement and suppression issues." (ECF No. 10, PageID.51, ¶ 7.) After reviewing all transcripts, briefing, caselaw, discovery, the PSR, and this Court's decisions, attorney Eckes determined that "the suppression issue and any challenge to Mr. Clark's career offender status would not be successful as appellate issues." (*Id.*, ¶ 9.) Attorney Eckes "did not want to water down what [he] felt were the better issues with issues that [he] did not believe would be successful." (*Id.*, ¶ 10.) Attorney Eckes communicated with Defendant throughout the appeal process, and Defendant expressed "that he appreciated and was satisfied with the work . . . on his behalf." (*Id.*, ¶ 11.)

Defendant has provided no evidence to counter attorney Eckes' strategic conclusion that the issues not raised would not have been successful on direct appeal. Moreover, the Court has already determined that Defendant's challenges regarding suppression proceedings, the career offender enhancement, and the statutory enhancement lack merit. Thus, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Defendant, therefore, is not entitled to relief with respect to ground II.

In sum, Defendant has not demonstrated that trial and appellate counsel rendered ineffective assistance in the ways Defendant asserts. Defendant, therefore, is not entitled to relief on his § 2255 motion. Furthermore, because the record conclusively establishes that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing.

## III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that she is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**IV.     Conclusion**

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir.

2013) (requiring a separate judgment in habeas proceedings).


Dated:      December 4, 2024                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge